# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 8338 | DATE | 5/17/2004 |
| CASE TITLE | | Foss vs. Bear, Stearns & Co. | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants defendants' motion to dismiss (3-1). Judgment is entered dismissing Counts 1 through 5 for failure to state a claim and dismissing Counts 6 and 7 for lack of subject matter jurisdiction.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 21 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 1Y |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH FOSS, Administrator of the<br>Estate of Vincent P. Koth,<br>   Plaintiff,<br><br>vs.<br><br>BEAR, STEARNS & CO., INC, and<br>PATRICK O'MEARA,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 03 C 8338 |

DOCKETED
MAY 21 2004

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Kenneth Foss, the administrator of the Estate of Vincent P. Koth, alleges that the Estate was fleeced of millions of dollars worth of securities that it once held. Foss has filed suit against the securities brokerage firm Bear, Stearns & Co. and Patrick O'Meara, who during the relevant time period was an account executive at Bear Stearns, under section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and SEC Rule 10b-5(a) & (c), 17 C.F.R. § 240.10b-5(a) & (c). Foss claims that the Estate's former administrator Arthur McDonnell, working with O'Meara, stole, converted, and sold securities belonging to the Estate and kept the proceeds. Foss has also brought a common law claim against Bear Sterns for negligent supervision of O'Meara. The defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grants defendants' motion.

### Background

Vincent P. Koth died on May 19, 1998, having accumulated a substantial amount of assets, consisting in significant part of securities issued by various corporations and

governmental authorities. The certificates representing the securities were registered in Koth's name, or were in "bearer" form, and were kept in safe deposit boxes in Chicago. Koth also maintained accounts with various issuers of securities.

After Koth died, Arthur McDonnell, a distant relative who was not one of Koth's heirs, was appointed administrator of the Estate. Koth contends that McDonnell discovered the previously mentioned certificates but did not report their existence to the Probate Court. In November 1998, McDonnell formed International Investments of Elgin, Inc. ("IIE"), and he opened an account in IIE's name at Bear Stearns through Patrick O'Meara, his son-in-law and an account executive at the firm. Securities certificates belonging to the Estate and representing approximately $1.4 million in assets were received into IIE's account. Thereafter, additional assets of the Estate with an aggregate value of approximately $600,000 were received into the IIE account. Bear Stearns performed the functions necessary to transfer record ownership of these assets into a form of ownership that permitted the firm to deliver the securities to a purchaser when sold by IIE. McDonnell and O'Meara began to sell the securities in November 1998; they caused the proceeds to be transferred to other accounts at Bear Stearns which were not for the benefit of the Estate.

Foss also alleges that McDonnell, after discovering that Koth held assets in accounts at the issuers of securities or their agents, instructed Bear Sterns to perform the functions necessary to have them transferred into an ownership form that permitted Bear Stearns to receive them into IIE's account and later to deliver them to complete their sale. Foss alleges that between November 1998 and June 2000, securities belonging to the Estate were received into the IIE account and were sold for proceeds of over $2 million, which were disbursed from the account

2

and were not returned to the Estate.

Foss also alleges that McDonnell and O'Meara used the Estate's assets in the IIE account to purchase and sell securities in that account, and as collateral for other purchases. Between November 1998 and September 1999, Foss alleges, an total of over $13 million in securities were purchased in approximately 275 transactions. O'Meara allegedly received compensation (presumably in the form of commissions) on these transactions. Eventually, the IIE account was liquidated, and the balance was wire transferred by Bear Stearns to an account at First National Bank of Naples, Florida in which the Estate had no interest.

In September 1999, O'Meara's association with Bear Stearns terminated, and he became associated with the securities firm R.K. Grace & Company in its Miami, Florida office. In October 1999, McDonnell opened an account at R.K. Grace in his own name, and approximately $50,000 of assets of the Estate were received into this account.

According to Foss, McDonnell concealed the existence of assets of the Estate and their subsequent theft by, among other things, filing false inventories with the Probate Court and falsifying tax returns to conceal the fact of the investment income received by Koth from his large securities portfolio. During the winter of 2002, however, information came to the attention of an attorney for an heir of the Estate that Koth had an investment portfolio at the time of his death which McDonnell had not reported to the Court. An investigation was conducted which disclosed the existence of the IIE account at Bear Stearns. McDonnell was removed as administrator in May 2002 and was replaced by Calvin Foss, an heir to the Estate. In late September 2002, Foss obtained the IIE account opening documents and account statements from Bear Stearns, and he thereafter sought to establish the Estate's ownership of the securities

contributed to the account. In December 2002, Foss initiated proceedings in the Probate Court to recover property from Arthur McDonnell, alleging that McDonnell had converted or embezzled assets from the Estate. Calvin Foss died in January 2003 and was replaced by Kenneth Foss, the current administrator, in April 2003. In May 2003, judgment was entered against McDonnell for slightly over $3.4 million, representing the dollar value of assets found by the Probate Court to have been unlawfully converted and embezzled from the estate by McDonnell, plus pre-judgment interest.

Defendants contend that Foss's claims are time-barred and in any event fail to state a claim.

## Analysis

Dismissal under Rule 12(b)(6) is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). In considering the motion, the court accepts as true all well pleaded facts alleged in the complaint and draws reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

Some form of deceptive or manipulative conduct in connection with the purchase or sale of securities is required for liability under section 10(b). *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177-78 (1994); *Chiarella v. United States*, 445 U.S. 222, 232 (1980). Deceptive conduct actionable under the statute consists of making a knowing misstatement or omission of a material fact in connection with the purchase or sale of

securities on which the plaintiff relied, proximately causing the plaintiff to suffer an injury. *See, e.g., In re HealthCare Compare Corp. Securities Litigation,* 75 F.3d 276, 280 (7th Cir. 1996). Foss does not allege that O'Meara or Bear Stearns made any misrepresentations or material omissions upon which the Estate relied.

Though SEC Rule 10b-5(c) also permits a claim based on "manipulative" conduct, that term is intended to refer to practices that are intended to mislead investors by artificially affecting market activity, such as matched orders, rigged prices, and the like. *See Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 476 (1977).[1] A claim of manipulative conduct under Rule 10b-5(c) does not require always proof of material misrepresentations or omissions, *see, e.g., In re Initial Public Offering Securities Litigation,* 241 F. Supp. 2d 281, 385 (S.D.N.Y. 2003), but such a claim does require, among other things, an allegation that the plaintiff was injured by relying on a market for securities that was controlled or artificially affected by the defendant's deceptive or manipulative conduct, and no such allegation appears in Foss's complaint. Rather, what Foss alleges amounts to conversion or theft of securities, which, without more, is not actionable under section 10(b). *See, e.g., Flickinger v. Harold Brown & Co.,* 947 F.2d 595, 598 (2d Cir. 1991) ("Section 10(b) is not violated by a fraudulent scheme that, some time after a purchase of securities, divests the purchaser of ownership.").

Foss says that his claim is supported by the Supreme Court's recent decision in *SEC v. Zandford,* 535 U.S. 813 (2002). In *Zandford,* the defendant, a securities broker, persuaded an

---

[1] A plaintiff may also bring a claim under section 10(b) and Rule 10b-5 for churning, where a broker advances his own interests over that of the customer by excessively trading the customer's account, though it is unclear to the Court which subsection of Rule 10b-5 authorizes such claims. *See, e.g., Caiola v. Citibank, N.A., New York,* 295 F.3d 312, 324 (2d Cir. 2002); *Costello v. Oppenheimer, Inc.,* 711 F.2d 1361, 1367 (7th Cir. 1983).

5

elderly man, Wood, to open an account for himself and his mentally retarded daughter, and to give the defendant discretion to manage the account. The account's stated objectives were "safety of principal and income." Relying on the defendant's promise to invest his money conservatively, Wood entrusted him with over $400,000. By the time Wood died, all of the money was gone. An investigation revealed that the defendant had sold securities in Wood's account and transferred the proceeds to accounts that he (the defendant) controlled. The court of appeals held that the complaint did not allege fraud in connection with the purchase or sale of securities and thus failed to state a claim. The Supreme Court reversed, holding that each sale of securities from Wood's account made to further the defendant's fraudulent scheme was deceptive because it was neither authorized nor disclosed, and that "each time [the defendant] 'exercised his power of disposition for his own benefit,' that conduct, 'without more,' was a fraud." *Id.* at 821 (quoting *United States v. Dunn*, 268 U.S. 121, 131 (1925)).

*Zandford* certainly would support a claim against McDonnell, the Estate administrator who sold the Estate's stock and took the proceeds for his own benefit; assuming Foss's allegations are true, McDonnell committed a fraud in connection with each sale of securities by failing to disclose it and by taking the proceeds for his own benefit. But unlike McDonnell and unlike the broker in *Zandford*, O'Meara and Bear Stearns had no dealings or relationship of any kind with the Estate, and they are not claimed to have had any duty to disclose vis-a-vis the Estate. Accordingly, their silence in connection with the transfers of securities into the JE account and the purchases and sales of securities in that account is not actionable under section 10(b). *See generally Chiarella*, 445 U.S. at 230 (liability for silence under section 10(b) "is premised upon a duty to disclose arising from a relationship of trust and confidence between

parties to a transaction.").

If Foss's allegations are true, O'Meara and Bear Stearns assisted McDonnell in carrying out his fraudulent scheme. But the law does not authorize a private action under section 10(b) for aiding and abetting. *Central Bank of Denver*, 511 U.S. at 177. Rather, "the statute prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act. The proscription does not include giving aid to a person who commits a manipulative or deceptive act. We cannot amend the statute to create liability for acts that are not themselves manipulative or deceptive within the meaning of the statute." *Id.* at 177-78 (citations omitted). Because Foss does not allege that O'Meara or Bear Stearns committed deception or manipulation within the meaning of the statute in connection with the purchase or sale of securities, he cannot maintain a claim against them under section 10(b). For these reasons, the Court dismisses Counts 1 through 5 for failure to state a claim.

Because the Court is dismissing all of Foss's federal claims, we decline to exercise supplemental jurisdiction over his negligent supervision claims (Counts 6 and 7). *See* 28 U.S.C. § 1367(c)(3).

## Conclusion

For the reasons stated above, the Court grants defendants' motion to dismiss [docket # 3-1]. The Clerk is directed to enter judgment dismissing Counts 1 through 5 for failure to state a claim and dismissing Counts 6 and 7 for lack of subject matter jurisdiction.

Date: May 17, 2004

_____
MATTHEW F. KENNELLY
United States District Judge

7